IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. _____

JANE FAGAN, Individually and as Surviving
Spouse of JOHN FAGAN, Deceased

      Plaintiff,

v.

LESLEY A. FRASER, M.D.;
JOSEPH C. LIVENGOOD, M.D.;
and ASPEN VALLEY HOSPITAL DISTRICT
d/b/a ASPEN VALLEY HOSPITAL

      Defendants.

---

## PLAINTIFF'S COMPLAINT, JURY DEMAND, AND CERTIFICATE OF REVIEW

---

Plaintiff, Jane Fagan, Individually and as Surviving Spouse of John Fagan, Deceased, through her attorneys, Thomas Keel & Laird, L.L.C. and Ogborn Mihm LLP, submits the following Complaint, Jury Demand, and Certificate of Review:

## I.  CERTIFICATE OF REVIEW

Pursuant to C.R.S. § 13-20-602(3)(a), counsel certifies as follows:

a.     Counsel has consulted with physicians, health care providers and health care administrators with expertise in the areas of the alleged conduct as set forth in Plaintiff's Complaint;

b.      The physicians, health care providers and health care administrators who have been consulted have reviewed all known facts relevant to the allegations of conduct as complained of in Plaintiff's Complaint;

c.      Based upon such facts, these physicians, health care providers and health care administrators have concluded that the filing of the claims against Defendants does not lack substantial justification within the meaning of C.R.S. § 13-17-102(4); and,

d.      The physicians, health care providers and health care administrators who have reviewed all known facts relevant to the allegations of conduct as contained in Plaintiff's Complaint for Damages meet the requirements set forth in C.R.S. § 13-64-401.

## II.      JURISDICTION AND PARTIES

1.      This Honorable Court has jurisdiction as this is a diversity action filed under the provisions of 28 U.S.C. § 1332 by reason of the diversity of the citizenship of the parties and the amount in controversy. The Plaintiff is a citizen of Texas. The Defendants are citizens of Colorado or corporations incorporated under the law of Colorado with their principal places of business in Colorado. The amount in controversy, without interest and costs, exceeds $75,000.00.

2.      Plaintiff, Jane Fagan's, address is as follows: 230 Pine Shadow Drive, Livingston, Texas 77351.

3.      At all times relevant, Jane Fagan was married to John Fagan.

4.      At all relevant times, Defendant, Lesley A. Fraser, M.D. (hereinafter referred to as "Defendant Fraser"), was a physician licensed to practice medicine in the State of Colorado specializing in surgery.

5.      At all relevant times, Defendant, Joseph C. Livengood, M.D. (hereinafter referred to as "Defendant Livengood"), was a physician licensed to practice medicine in the State of Colorado specializing in surgery.

6.      Defendant, Aspen Valley Hospital District d/b/a Aspen Valley Hospital (hereinafter referred to as "AVH"), has its principal place of business at 0401 Castle Creek Road, Aspen, Colorado 81611.

7.      Plaintiff fully complied with the provisions of C.R.S. § 24-10-109 and, specifically, gave timely notice pursuant to C.R.S. § 24-10-109 first on May 16, 2016, and again on May 31, 2016.

8.      Although Plaintiff does not believe that Defendants Fraser and Livengood were public employees for purposes of the Colorado Governmental Immunity Act, C.R.S. § 24-10-101 *et seq.,* in an abundance of caution, notice was timely given pursuant to C.R.S. § 24-10-109 first on May 16, 2016, and again on May 31, 2016.

9.      The tortious conduct alleged herein occurred in Pitkin County, Colorado.

### III.      GENERAL ALLEGATIONS

10.      Plaintiff incorporates the preceding paragraphs herein by reference.

### John Fagan's Presentation to Aspen Valley Hospital and Pre-Operative Care

11.      On November 23, 2015, John Fagan presented to AVH.

12.      Mr. Fagan had presented to his primary care physician, Anne Goyette, M.D., earlier in the day on November 23, 2015, and Dr. Goyette sent him to the AVH emergency department with increasing symptoms of pain in his abdomen and for further evaluation.

13.     At the time Mr. Fagan presented to AVH on November 23, 2015, he was 53 years old.

14.     It was charted that, on presentation to AVH on November 23, 2015, Mr. Fagan's chief complaint was abdominal pain, which was noted to be worsening and waxing and waning with an onset of 21 days prior to presentation.

15.     It was charted on presentation to AVH on November 23, 2015, Mr. Fagan was suffering from low grade fevers of approximately 100°, coughs, and constipation.

16.     On November 23, 2015, in the AVH emergency department, Defendant Fraser saw Mr. Fagan.

17.     While Mr. Fagan was in the AVH emergency department on November 23, 2015, a CT scan of Mr. Fagan's abdomen and pelvis was performed.

18.     The CT scan of Mr. Fagan's abdomen and pelvis taken on November 23, 2015, revealed a 4.7 cm abscess in the left pelvis, adjacent to an inflamed sigmoid colon.

19.     The CT scan was reviewed by Shane Wheeler, MD.

20.     Dr. Wheeler charted in his report "4.7 cm abscess identified in the left pelvis, adjacent to inflamed sigmoid colon.  This most likely represents diverticulitis with associated diverticular abscess."

21.     On November 23, 2015, Defendant Fraser charted his impression and plan for Mr. Fagan as pelvic abscess likely secondary to perforated diverticulitis.

22.     On November 23, 2015, Defendant Fraser charted "[o]ptimal treatment at this point would be percutaneous drainage of the pelvic abscess, bowel rest, and intravenous antibiotics."

23.     On November 23, 2015, Defendant Fraser charted "[u]nfortunately, we do not have a body interventional radiologist here at Aspen Valley today."

24.     On November 23, 2015, providers at AVH, including Defendant Fraser, considered transfer for Mr. Fagan to Denver for treatment.

25.     Upon information and belief, on November 23, 2015, AVH had transfer agreements in place with higher level tertiary care centers, including St. Mary's Medical Center in Grand Junction, Colorado.

26.     On November 23, 2015, Defendant Fraser ordered Mr. Fagan admitted to AVH.

27.     On November 23, 2015, Defendant Fraser's orders for Mr. Fagan on admission to the AVH PCU were IV antibiotics and bowel rest.

28.     Mr. Fagan remained an inpatient at AVH throughout November 24, 2015.

29.     At 10:30 on November 24, 2015, Terry L. Larson, R.N. noted that Mr. Fagan was "ambulating in halls with wife in A.M. around PCU x 2 laps."

30.     On November 24, 2015, at approximately 16:30, Dr. Fraser documented that Mr. Fagan had improved pain control, his abdomen was soft and tender in the LLQ, and he was stable.

31.     At 16:49 on November 24, 2015, Nurse Larson noted that Mr. Fagan was "ambulating in halls on PCU with wife."

32.     At 22:15 on November 24, 2015, Heather Lauritzen, R.N. noted that Mr. Fagan was "walking unit with wife between 21:30 and 22:00" and that his heart rate and $O_2$ sat were stable.

**November 25, 2015, and Defendants' Surgery**

33.     Between November 24, 2015, and November 25, 2015, Mr. Fagan's abdominal pain increased.

34.     At approximately 07:58 on November 25, 2015, the progress notes indicate that Mr. Fagan had fever and increased pain overnight, with a temperature of 100.2°, and that the plan would be to go to the OR that day.

35.     At 08:13 on November 25, 2015, Jennifer Grefe, R.N. documented that she had "received report from Heather, RN. States pain 8/10 in LLQ of abdomen. Received bolus dose of Dilaudid PCA. Dr. Fraser here to see and discuss options and possible surgery today. Will monitor."

36.     On November 25, 2015, Defendants Fraser and Livengood evaluated Mr. Fagan.

37.     On November 25, 2015, Defendants Fraser and Livengood decided to operate on Mr. Fagan.

38.     Defendant Fraser charted "the patient was admitted, put on antibiotics and pain control with bowel rest. He improved over the next 24 hours. However then after 48 hours, his symptoms were worsening. We made the decision to bring him to the operating room for laparoscopy, possible drain placement, possible colectomy."

39.     At approximately 12:40 on November 25, 2015, Defendant Fraser began his surgical procedure on Mr. Fagan at AVH.

40.     Defendant Fraser was assisted by Defendant Livengood.

41.     Defendant Fraser charted that his pre and postoperative diagnosis for Mr. Fagan was a perforated sigmoid colon with abscess.

42.     During the November 25, 2015, procedure, Defendants Fraser and Livengood dehisced Mr. Fagan's small bowel and appendix from his colon and took the laparoscope down the colon toward the rectum and tried to free the colon from any lateral attachments.

43.     During the November 25, 2015, procedure, Defendants Fraser and Livengood divided Mr. Fagan's proximal rectum.

44.     During the November 25, 2015, procedure, Defendants Fraser and Livengood also divided Mr. Fagan's colon proximally.

45.     The risks of the operation performed by Defendants Fraser and Livengood on Mr. Fagan on November 25, 2015, included possible need for reoperation.

46.     On November 25, 2015, post-operative imaging was not ordered to investigate the presence or absence of post-operative leakage.

**Defendants' Post-Operative Care of John Fagan's Worsening Condition**

47.     On November 25, 2015, Defendant Livengood assumed care of Mr. Fagan.

48.     At 18:00 on November 25, 2015, Mr. Fagan's vital signs were:

- Temp: 98.1°
- BP: 118/70;
- Pulse: 93;
- Respirations: 16;
- O2 Stats: 96% - Tent; and
- Pain: 3/10.

49.     At 19:34 on November 25, 2015, Nurse Grefe documented that Mr. Fagan had returned from the PACU at 17:50, and that he was "oriented and slightly drowsy upon returning. Minimal pain in abdomen."

50.     AVH nurses also charted that, upon returning from surgery and the post-anesthesia care unit (PACU) on November 25, 2015, they reported to Defendant Fraser that Mr. Fagan was sedated and exhibiting a fever and higher oxygen needs.

51.     At 22:23 on November 25, 2015, Mr. Fagan's vital signs were:

- Temp: n/a
- BP: n/a;
- Pulse: 117;
- Respirations: 20;
- O2 Stats: 91% on 3L of Oxygen; and
- Pain: 8/10.

52.     At 22:25, Nurse Lauritzen charted that Mr. Fagan was in such pain during the evening of November 25, 2015, that he awoke to report his pain (8/10) to the AVH providers at 22:20.

53.     At 22:51 on November 25, 2015, Mr. Fagan's vital signs were:

- Temp: n/a
- BP: 159/85;
- Pulse: 115;
- Respirations: 20;
- O2 Stats: 91% on 3L of Oxygen; and
- Pain: 7/10.

54.     At 22:53 on November 25, 2015, Mr. Fagan's temperature was charted to be 100.4°.

55.     On November 25, 2015, no imaging was performed on Mr. Fagan.

56.     At 00:55 on November 26, 2015, Nurse Lauritzen charted that Mr. Fagan "called at 23:00 with [a]n incontinent stool episode. Pt states it came abruptly with stomach gurgling. Medium, loose/liquid stool. Pt cleaned, sheets changed. Pt called again at 00:10 with another [incontinent] stool episode stating it came on the same way. Pt up to chair to clean bed. Pt hot to

the touch. Temp 98.4°. Given Tylenol and an ice pack per request. Pt hot/cold through evening.

Pain well 5/10 and tolerating at time being."

57.     At 02:41 on November 26, 2015, Mr. Fagan's vital signs were:

- Temp: 98.2°
- BP: 117/74;
- Pulse: 93;
- Respirations: 20;
- O2 Stats: 95% on 3L of Oxygen; and
- Pain: 5/10.

58.     At 06:47 on November 26, 2015, hematology lab studies showed Mr. Fagan with the following:

- Bandemia with bands at 48% H (reference range: 0% – 10%);
- Leukocytosis with a white blood cell count (WBC) of 18.0 H (reference range: 4.2 – 11.0);
- Hyperglycemic at 170 H (reference range 70 – 99);
- Low sodium levels at 133 L (reference range: 134 – 142); and
- Elevated creatinine levels at 1.33 H (reference range: 0.55 – 1.30).

59.     At 07:30 on November 26, 2015, Dr. Livengood evaluated Mr. Fagan and noted "uncontrolled pain – sound like abdominal wall spasm – will add Valium". Dr. Livengood also documented "leukocytosis expected – will follow".

60.     At 08:00 on November 26, 2015, Mr. Fagan's vital signs were:

- Temp: 98.3°
- BP: 123/78;
- Pulse: 98;
- Respirations: 18;
- O2 Stats: 96% on 3L of Oxygen; and
- Pain: n/a.

61.     At 15:31 on November 26, 2015, Mr. Fagan's vital signs were:

- Temp: 97.6°
- BP: 94/58;

- Pulse: 112;
- Respirations: 15;
- O2 Stats: 93% on 3L of Oxygen; and
- Pain: 8/10.

62.     At 16:55 on November 26, 2015, Dr. Livengood evaluated Mr. Fagan and documented it was a good day and that Mr. Fagan's pain was better controlled.

63.     At 17:47 on November 26, 2015, Nurse Grefe charted "received report in AM from Heather, RN. States severe cramping pain in abdomen. Received new order for IV Valium. Received bolus dose of Dilaudid pca and Valium. Slept well after receiving Valium. Pain increased again at 12:30 and had shaking chills. Temp at that time 98.8 oral. Received Tylenol for comfort. Valium given per request again at 13:10. Slept in afternoon. Up to bathroom three times during day to have liquid bowel movement."

64.     At 19:45 on November 26, 2015, Jeff Smith, R.N. documented that Mr. Fagan's O2 sat was 94% on 3 L nasal cannula, his blood pressure was 85/56, and that there was no additional urine from interventions.

65.     At 19:45 on November 26, 2015, Nurse Smith noted that Mr. Fagan only had a "small amount of amber urine" in his Foley catheter despite receiving interventions.

66.     At 20:00 on November 26, 2015, Mr. Fagan's vital signs were:

- Temp: 97.6°
- BP: 85/56;
- Pulse: 94;
- Respirations: 18;
- O2 Stats: 96% on 3L of Oxygen; and
- Pain: 6/10.

67.     Nurse Smith documented at 20:15 on November 26, 2015, that he contacted Defendant Livengood about Mr. Fagan's low blood pressure and reported that Mr. Fagan was having poor urine output.

68.     At 20:15 on November 26, 2015, Nurse Smith charted that he received an order for a 500mL NS bolus over 1 hour and to monitor the effectiveness of intervention.

69.     At 22:15 on November 26, 2015, Mr. Fagan's vital signs were charted to be:

- Temp: 97.4°
- BP: 103/60;
- Pulse: 95
- Respirations: 18;
- O2 Stats: 99% on 3L of Oxygen; and
- Pain: 6/10.

70.     At 22:20 on November 26, 2015, Nurse Smith charted that the NS bolus was complete. "BP increased to 103/60. Pt continues to produce small amount of amber urine. Pt was incontinent of liquid, green stool. Pt is weak and unsteady. Pt continued to have liquid stool while sitting on the commode."

71.     At 22:50 on November 26, 2015, documented that a bladder scan of Mr. Fagan revealed 101 mLs, and that Mr. Fagan complained of abdominal pain at 6/10.

72.     On November 26, 2015, aside from a bladder scan, no imaging was performed on Mr. Fagan.

73.     At 02:30 on November 27, 2015, Mr. Fagan's vital signs were:

- Temp: 97.8°
- BP: 99/61;
- Pulse: 111;
- Respirations: 18;
- O2 Stats: 94% on 3L of Oxygen; and
- Pain: 6/10.

74.     At 02:30 on November 27, 2015, Nurse Smith charted that Mr. Fagan had "120 mLs amber urine from Foley catheter since beginning of shift…bladder scan revealed 77 mLs", and Mr. Fagan was incontinent of "liquid, green stool".

75.     At 02:45 on November 27, 2015, Nurse Smith charted that he contacted Defendant Livengood about Mr. Fagan's poor urine output, vital signs, "lab CR 1.33," and bladder scan.

76.     At 02:45 on November 27, 2015, Nurse Smith charted that he "received order for 500 mL bolus NS over 1 hour, discontinue Toradol, and CBC in AM".

77.     At 03:20 on November 27, 2015, Nurse Smith documented that the patient was awake and had complaints of abdominal cramping rated at 6/10.

78.     At 05:39 on November 27, 2015, Mr. Fagan's blood pressure was charted to be 65/42.

79.     At 06:32 on November 27, 2015, hematology lab studies showed that Mr. Fagan had the following:

- Increasing bandemia with bands at 57% H (reference range: 0% – 10%);
- Continued leukocytosis with a WBC of 11.6 H (reference range: 4.2 – 11.0);
- A high platelet count at 430 H (reference range: 150 – 400);
- Continued hyperglycemia at 181 H (reference range: 70 – 99);
- Acute renal insufficiency with an elevated creatinine of 3.72 H (reference range: 0.55 – 1.30); and
- Elevated hematocrit at 48% (reference range: 40 – 54).

80.     At 06:50 on November 27, 2015, Nurse Smith charted that he contacted Defendant Livengood with Mr. Fagan's abnormal lab values and "received orders to change IV

fluids to D5NS at 125 ml/hr, give 500 ml bolus NS over 1 hour, chem 7 panel at 12:00, and renal ultrasound to look for hydronephrosis".

81.    Defendant Livengood charted that at 07:55 on November 27, 2015, his diagnoses for Mr. Fagan included acute renal insufficiency, hyperkalemia, hyperglycemia, and metabolic acidosis likely 2° to acute renal insufficiency.

82.    At 08:00 on November 27, 2015, Mr. Fagan's vital signs were:

- Temp: 98.0°
- BP: 85/52;
- Pulse: 112;
- Respirations: 18;
- O2 Stats: 94% on 3L of Oxygen; and
- Pain: 7/10.

83.    At 08:57 on November 27, 2015, Mary Frances Powell, RN, charted that at 08:00 Mr. Fagan reported being fatigued, tired. She also charted "pain 7/10 abdomen…Pt s/b Dr. Livengood assessed…incontinent of stool.  Pt report having loose stool. Liquid green."

84.    At 09:00 on November 27, 2015, an ultrasound of Mr. Fagan's kidneys was performed.

85.    The November 27, 2015, ultrasound of Mr. Fagan's kidneys was read by Kristen Freestone, M.D.

86.    Dr. Freestone reported her final diagnostic imaging report at 10:20 on November 27, 2015, and signed her report at 10:25 on November 27, 2015.

87.    In her report, Dr. Freestone charted her impression of the ultrasound to be normal kidneys, no hydronephrosis, new ascites and left colonic wall thickening, possibly colitis.

88.    In her report, Dr. Freestone charted "Consider a follow-up CT."

89.     No follow-up CT to the November 27, 2015 ultrasound was performed

90.     At 09:53 on November 27, 2015, Mr. Fagan's vital signs were:

- Temp: n/a
- BP: 102/69;
- Pulse: 115;
- Respirations: 22;
- O2 Stats: 94% on 3L of Oxygen; and
- Pain: 7/10.

91.     At 09:57 on November 27, 2015, Nurse Powell charted that at 09:55 Mr. Fagan was checked and "urine output 30 mLs last x2 hours US at bedside – bladder scan. Bladder empty. Trauma RN Melanie Crandall update to tex[t] information to Dr. Livengood."

92.     At 10:18 on November 27, 2015, Nurse Powell charted that Mr. Fagan was incontinent of stool. "1015 pt report stool – large liquid bile/brown...Nausea/pain."

93.     At 11:03 on November 27, 2015, Nurse Powell charted "10:45 confirm results of kidney US sent to Dr. Livengood by trauma RN Melanie Crandall – normal kidneys hydronephrosis. New ascites and left colonic wall thickening, possible colitis. No new order."

94.     At 12:00 on November 27, 2015, Mr. Fagan's vital signs were:

- Temp: 98.1°
- BP: 127/68;
- Pulse: 118;
- Respirations: 22;
- O2 Stats: 93% on 3L of Oxygen; and
- Pain: 7/10.

95.     At 12:17 on November 27, 2015, Nurse Powell charted that Mr. Fagan was checked at 12:00, and "HR 118. Pt report feeling to[o] tired to attempt IS."

96.     At 12:20 on November 27, 2015, lab studies documented Mr. Fagan to have the following:

- Continued acute renal insufficiency potassium levels at 5.8 H (reference range: 3.2 – 5.2);
- High glucose levels at 187 H (reference range 70 – 99);
- High blood urea nitrogen (BUN) levels at 38 H (reference range: 7 – 18);
- His glomerular filtration rate (GFR), which evaluates kidney function, indicated severe kidney reduction at 16 L (reference range: 15-29 is severe reduction, < 15 is kidney failure); and
- Elevated creatinine levels at 4.10 H (reference range: 0.55 – 1.30).

97.     At 13:04 on November 27, 2015, Lauri L. Cross, RN, charted that she "phoned labs to MD – will repeat at 19:00 per order".

98.     At 14:00 on November 27, 2015, Mr. Fagan's vital signs were:

- Temp: 97.7°
- BP: 107/66;
- Pulse: 118;
- Respirations: 22;
- O2 Stats: 93% on 3L of Oxygen; and
- Pain: 8/10.

99.     At 14:08 on November 27, 2015, Nurse Powell documented Mr. Fagan's blood pressure as 107/68 and heart rate as 118, and that Mr. Fagan had abdominal pain rated as 8/10. Request was made for bolus 0.4 mg Dilaudid.

100.     At 14:30 on November 27, 2015, Mr. Fagan's pulse was charted to be 138 and his respiration rate to be 24.

101.     At 14:50 on November 27, 2015, Nurse Powell charted that Mr. Fagan was incontinent with liquid stool. She also charted that "Pt sat on the commode for 10 minutes" and that Mr. Fagan complained of nausea. Mr. Fagan's heart rate was noted to be 138.

102.     At 15:08 on November 27, 2015, Nurse Powell charted that, at 15:05 a phone report was given to Dr. Livengood. "Update > HR when up to commode. Foley output 20 mLs per hour of amber urine. PT had 3rd liquid stool shift. Normal saline bolus 500 mL ordered."

103.     At 16:40 on November 27, 2015, Nurse Powell noted that Mr. Fagan had liquid green stool 100 mL at 15:30 and that Mr. Fagan "sat on commode for 10 minutes".

104.     At 18:00 on November 27, 2015, Mr. Fagan's vital signs were:

- Temp: 97.8°
- BP: 102/67;
- Pulse: 116;
- Respirations: 24;
- O2 Stats: 92% on 3L of Oxygen; and
- Pain: 5/10.

105.     At 19:02 on November 27, 2015, laboratory chemistry revealed Mr. Fagan was suffering from the following:

- Critical potassium levels at 6.0 H (reference range: 3.2 – 5.2);
- Elevated glucose levels at 182 H (reference range: 70 – 99);
- Elevated BUN levels at 42 H (reference range: 7 – 18); and
- Elevated Creatinine levels at 4.08 H (reference range: 0.55 – 1.30).

106.     At 19:30 on November 27, 2015, Mr. Fagan's potassium level was reported to Defendant Livengood.

107.     At 19:45 on November 27, 2015, Ross Corwin, R.N. documented that Mr. Fagan had elevated potassium, the "MD" was notified, and new orders were in the chart. The elevated potassium was noted to be a critical result, and Nurse Corwin noted that Dr. Livengood was alerted of this critical result at 19:35.

108.     At 20:00 on November 27, 2015, Mr. Fagan's vital signs were charted to be:

- Temp: 97.7°
- BP: 125/77;
- Pulse: 123;
- Respirations: 23;
- O2 Stats: 92% on 3.5L of Oxygen; and
- Pain: 5/10.

109.    At 21:21 on November 27, 2015, Mr. Fagan's blood pressure was charted to be 79/35.

110.    At 21:22 on November 27, 2015, Mr. Fagan's blood pressure was charted to be 75/47.

111.    At 21:23 on November 27, 2015, Mr. Fagan's blood pressure was charted to be 75/49.

112.    On November 27, 2015, no imaging of Mr. Fagan was performed aside from an ultrasound of Mr. Fagan's kidneys.

113.    At 01:00 on November 28, 2015, lab studies of Mr. Fagan showed the following:

- Kidney failure with a GFR at 14 L (reference range: <15 is kidney failure); and
- Critical potassium levels at 6.1 H (reference range: 3.2 – 5.2).

114.    At 01:20 on November 28, 2015, Mr. Fagan was found to be Clostridium difficile positive (hereinafter referred to as "C. diff").

115.    At 01:30 on November 28, 2015, Nurse Corwin charted call to MD with lab values, including alerting Dr. Livengood of the critical result of potassium of 6.1.

116.    At 02:00 on November 28, 2015, Mr. Fagan's vital signs were:

- Temp: 98.2°
- BP: 116/78;
- Pulse: 126;
- Respirations: 20;
- O2 Stats: 91% on 3.5L of Oxygen; and
- Pain: n/a.

117.    Mr. Fagan's C. diff positive result was called to Jennifer Murillo, RN at 02:35 on November 28, 2015.

118.    At 06:45 on November 28, 2015, Nurse Corwin charted that Mr. Fagan was "allowed to rest as much as possible this shift (per his request) – visited when needed, still needs management of e-lytes and fluid balance".

119.    At 06:50 on November 28, 2015, lab studies of Mr. Fagan revealed the following:

- Bandemia with bands at 37% H (reference range: 0% – 10%);
- Leukocytosis with a WBC count of 13.8 H (reference range: 4.2 – 11.0);
- An elevated HGB level at 16.3 H (reference range: 12.0 – 16.0); and
- Increasingly elevated platelet count of 651 H (reference range: 150 – 400).

120.    On November 28, 2015, Nurse Perillo documented that she called Dr. Livengood to alert him of Mr. Fagan's critical potassium lab result of 6.0 at 07:26, and received a call back from Dr. Livengood at 07:31.

121.    At 09:10 on November 28, 2017, a urinalysis of Mr. Fagan revealed the following:

- Cloudy urine;
- Positive protein screen (reference range: negative);
- Positive Ketones (reference range: negative);
- Positive Bili-screen (reference range: negative);
- Blood in urine at moderate (reference range: negative);
- Elevated WBC at 5 – 10 H (reference range: 0 – 5);
- Elevated RBC at 5 – 10 H (reference range: 0 – 5);
- Elevated squamous epi Cell at 2 – 5 H (reference range: 0);
- Positive bacteria screen at 1+ (reference range: none seen); and
- High serum osmolality at 299 H (reference range: 275 – 295).

122.    At 09:45 on November 28, 2015, Dr. Livengood saw Mr. Fagan and his assessment and included C.diff, hyperglycemia, hyperkalemia, and acute renal failure. Dr. Livengood noted that Mr. Fagan's hyperkalemia may necessitate transfer for dialysis, and that he would discuss Mr. Fagan's acute renal failure with nephrology in Grand Junction and that Mr. Fagan may require transfer for nephrology care. Dr. Livengood also documented leukocytosis

and was considering a CT of the abdomen/pelvis to look for an abscess if this continued to increase.

123.    At 11:18 on November 28, 2015, Linda Perillo, RN, charted that "Dr. Livengood notified at 10 AM and 11 AM of Mr. Fagan's low urine output. Second 500 cc NS bolus ordered and hung. Will cont to monitor."

124.    At 12:20 on November 28, 2015, labs revealed Mr. Fagan was suffering from the following:

- Elevating potassium levels at 5.9 H (reference range: 3.2 – 5.2);
- Increasing levels of glucose at 190 H (reference range: 70 – 99);
- Elevating BUN levels at 56 H (reference range: 7 – 18); and
- Elevating creatinine levels at 4.53 H (reference range: 0.55 – 1.30).

125.    At 14:06 on November 28, 2015, Mr. Fagan's vital signs were charted to be:

- Temp: 98.9°
- BP: 127/83;
- Pulse: 120;
- Respirations: 19;
- O2 Stats: 92% on 4L of Oxygen; and
- Pain: n/a.

126.    At 14:20 on November 28, 2015, Nurse Perillo charted that she notified Dr. Livengood about Mr. Fagan's last two hours of output, and that "another 500 cc NS bolus ordered and given. Will cont to monitor."

127.    At 17:08 on November 28, 2015, Nurse Perillo charted "Dr. Livengood notified of Mr. Fagan's low urine output. No new orders given. Will recheck labs at 1800."

128.    At 18:13 on November 28, 2015, Mr. Fagan's vital signs were charted to be:

- Temp: 98.9°
- BP: 127/83;
- Pulse: 120;

- Respirations: 19;
- O2 Stats: 91% on 4L of Oxygen; and
- Pain: 5/10.

129.    At 18:14 on November 28, 2015, labs showed Mr. Fagan to be suffering from the following:

- Increasingly elevated potassium levels at 5.9 H (reference range: 3.2 – 5.2);
- Increasingly elevated glucose levels at 200 H (reference range: 70 – 99);
- Increasingly elevated BUN levels at 59 H (reference range: 7 – 18); and
- Increasingly elevated creatinine levels at 5.02 H (reference range: 0.55 – 1.30).

130.    At 18:40 on November 28, 2015, Nurse Perillo charted "call Dr. Livengood with 18:00 lab results. Will check labs at midnight. No new orders given. Dr. Livengood in talking with Pt and wife. Will cont to monitor."

131.    At 18:45 on November 28, 2015, Dr. Livengood documented that he would reconsider the transfer of Mr. Fagan to St. Mary's in the morning.

132.    At 19:30 on November 28, 2015, Nurse Smith charted that Mr. Fagan "is weak and unsteady…O2 SAT 91% on 4L NC… Pt remains in sinus tach with HR 125 – 130."

133.    At 20:00 on November 28, 2015, Mr. Fagan's vital signs were:

- Temp: 99.2°
- BP: 131/85;
- Pulse: 131;
- Respirations: 22;
- O2 Stats: 91% on 4L of Oxygen; and
- Pain: 5/10.

134.    At 20:30 on November 28, 2015, Nurse Smith again noted that Mr. Fagan's gait was unsteady and that he had 20 mLs of liquid, yellow stool.

135.    At 21:59 on November 28, 2015, Nurse Smith noted Mr. Fagan's $O_2$ sat at 91% on 4L nasal cannula, and that Mr. Fagan continued to have poor urine output, averaging 10 to 20 mLs/hr from the Foley cath.

136.    Defendant Livengood charted that on November 28, 2015, he attempted to reach the nephrologist in Grand Junction, but did not hear back from him/her.

137.    On November 28, 2015, no imaging of Mr. Fagan was performed aside from a bladder scan.

138.    At 00:04 on November 29, 2015, Mr. Fagan's vital signs were:

- Temp: 99.2°
- BP: 126/86;
- Pulse: 126;
- Respirations: 20;
- O2 Stats: 92% on 4L of Oxygen; and
- Pain: 4/10.

139.    At 00:05 on November 29, 2015, labs revealed Mr. Fagan to be suffering from the following:

- Worsening kidney failure with his GFR at 12 L (reference range: <15 is kidney failure);
- Increasingly elevated creatinine levels at 5.27 H (reference range: 0.55 – 1.30); and
- Continued hyperglycemia with a glucose level of 203 H (reference range: 70 – 99).

140.    At 00:10 on November 29, 2015, Nurse Smith documented Mr. Fagan's $O_2$ sat at 92% on 4L nasal cannula, and noted that Mr. Fagan remained in sinus tachycardia with heart rates between 120 and 130.

141.    At 00:30 on November 29, 2015, Nurse Smith charted that he notified Dr. Livengood of Mr. Fagan's lab results, poor urine output, and vital signs, and documented that there were no new orders.

142.    At 00:40 on November 29, 2015, Nurse Smith noted Mr. Fagan's blood glucose of 203 and "gave 6 units Humalog per moderate dose SS".

143.    At 03:00 on November 29, 2015, Mr. Fagan's vital signs were:

- Temp: 98.9°
- BP: 111/69;
- Pulse: 135;
- Respirations: 24;
- O2 Stats: 92% on 4L of Oxygen; and
- Pain: 5/10.

144.    At 03:00 on November 29, 2015, Nurse Smith documented that Mr. Fagan was "weak, unsteady, and restless," that he continued to have poor urine output at 10 to 20 mLs/hr, and that he remained sinus tachy with a heart rate from 120 – 135, and had an O$_2$ sat of 92% on 4L nasal cannula.

145.    At 04:40 on November 29, 2015, Nurse Smith charted that Mr. Fagan was "becoming more restless and confused…pulling at lines and attempting to remove gown." He also documented that he "contacted Dr. Livengood with change in Pt's status. Received order for Lasix 40mg IV X1 dose.  Dr. Livengood is coming in to see Pt. Will continue to monitor."

146.    At 04:51 on November 29, 2015, Nurse Smith charted Mr. Fagan had "increasing generalized edema and hasn't produced any urine in past hour. Pt's HR is sustained in the 130s. Change in mental status with increased agitation and restlessness."

22

147.   At 05:24 on November 29, 2015, Nurse Smith charted "Dr. Livengood in to see pt and family. Discussed transferring pt to St. Mary's Hospital for further tx…received order to decrease IV fluid to TKO. Pt remains restless and agitated.  $O_2$ sat 92% on 5L NC.  Pt remains in sinus tach with HR in the 130-140s."

148.   At 05:25 on November 29, 2015, labs revealed that Mr. Fagan was still suffering from bandemia with bands at 47%.

149.   At 05:25 on November 29, 2015, Dr. Livengood documented that Mr. Fagan had increasing acidosis, agitation, and progression of acute renal failure, and that he recommended Mr. Fagan be transferred to a higher level facility for intensivist management and possible need for dialysis.

150.   At 05:30 on November 29, 2015, Defendant Livengood signed paperwork to transfer Mr. Fagan to a facility with specialty care, intensivist, and nephrology.

151.   At 05:46 on November 29, 2015, Mr. Fagan's vital signs were:

- Temp: 98.2°
- BP: 136/75;
- Pulse: 155;
- Respirations: 32;
- O2 Stats: 92% on 5L of Oxygen; and
- Pain: n/a.

152.   At 06:04, Nurse Smith noted that Mr. Fagan remained "agitated and anxious," and that his heart rate had increased to the 170 to 190 range.

153.   At 06:10 on November 29, 2015, labs showed Mr. Fagan suffering from the following:

- Leukocytosis with WBC level at 18.7 H (reference range: 4.2 – 11.0);
- Elevated red blood cell count at 6.09 H (reference range: 4.5 – 6.0);

- Elevated HGB level at 18.5 H (reference range: 12.0 – 16.0);
- Elevated HCT level at 56 H (reference range: 40 – 54);
- RDW at 14.6 H (reference range: 11.5 – 14.5); and
- Increasing platelet count at 648 H (reference range: 150 – 400).

154.    Lab studies at 06:10 on November 29, 2015, also showed that Mr. Fagan's kidney failure was worsening as his GFR was 11 L (reference range: <15 is kidney failure).

155.    On November 29, 2015, Defendant AVH requested an ambulance transfer for Mr. Fagan.

156.    On November 29, 2015, Defendant AVH's request for an ambulance transfer for Mr. Fagan was non-emergent.

157.    At approximately 08:10 on November 29, 2015, Mr. Fagan was noted to be loaded onto an Aspen Ambulance District ambulance.

158.    At 08:24 on November 29, 2015, Nurse Perillo documented that Mr. Fagan was "very agitated and confused at change of shift. Remained in room with Pt and tech to calm Pt down. Pt given Valium 10 MG at 07:21 with little results. Pt HR in 170-180. EKG showed afib."

159.    At 08:42 on November 29, 2015, Nurse Perillo documented "report to ambi and pt packed up and transferred to stretcher and taken away to ambulance…Pt transferred to St. Mary's."

160.    The Aspen Ambulance District records indicate that this was a non-emergent transport initially, and was changed to an emergent transport.

161.    St. Mary's Medical Center dispatched an ambulance to rendezvous with the Aspen Valley ambulance in DeBeque. Aspen Ambulance District Paramedic, Daniel Goddard, reported that Mr. Fagan was unresponsive at the time, but did have a pulse and was breathing on his own. The medic also reported that they were having a difficult time obtaining blood pressures

and oxygen saturations. The medic also report that Mr. Fagan had had abdominal surgery two days prior and had started having renal failure.

162.    At approximately 10:14 on November 29, 2015, Mr. Fagan was transferred from the Aspen Ambulance District ambulance and loaded onto a CareFlight ground ambulance and brought to St. Mary's Medical Center in Grand Junction, Colorado.

163.    The CareFlight record notes the reason for transport as "level of care required which is not available at patient's location".

164.    During Mr. Fagan's November 29, 2015, transfer to St. Mary's Medical Center, Mr. Fagan flatlined, required pressors to maintain his blood pressure, required 100% oxygen to maintain adequate oxygen saturation, and required resuscitation after he stopped breathing.

165.    Mr. Fagan was signed over from St. Mary's CareFlight ground ambulance to St. Mary's Medical Center at 11:06.

166.    On presentation to St. Mary's Hospital on November 29, 2015, Mr. Fagan's primary diagnosis was acute respiratory failure with hypoxia, atrial fibrillation, septic shock, peritonitis, and hyperglycemia.

167.    It was identified at St. Mary's that Mr. Fagan had suffered an anastomotic leak during the procedure at AVH.

168.    While Mr. Fagan was under the care of Defendants, the Defendants never identified, diagnosed, and/or treated Mr. Fagan's anastomotic leak.

169.    On November 29, 2015, St. Mary's providers took Mr. Fagan emergently to the operating room where he was noted to have 3L of purulence and stool in his abdominal cavity.

The preoperative diagnosis was noted to be sepsis and presumed anastomotic leak, and the postoperative diagnoses was noted to be sepsis and colorectal anastomotic leak.

170.    The surgeon noted that Mr. Fagan was transferred from Aspen Valley "in critical condition requiring pressor medication for blood pressure support and intubation for respiratory failure", and it was felt that Mr. Fagan "would benefit from emergent exploration and evacuation of abdominal source of his sepsis".

171.    On December 3, 2015, Mr. Fagan was again taken to the operating room for septic shock and anastomotic leak. It was documented that Mr. Fagan was "critically ill from an anastomotic leak after diverticulitis that was resected and anastomosed over a week ago in Aspen".

172.    Ultimately, despite the care rendered at St. Mary's Hospital, Mr. Fagan died on December 4, 2015, at St. Mary's Hospital.

173.    The cause of Mr. Fagan's death was charted as overwhelming gram negative septic shock, peritonitis, candidemia, acute renal failure, and acute respiratory failure.

## IV.  FIRST CLAIM FOR RELIEF
### (Medical Negligence – Defendant Fraser)

174.    Plaintiff incorporates the preceding paragraphs herein by reference.

175.    At all times relevant, John Fagan was under the care and treatment of Defendant Fraser.

176.    With respect to his care and treatment of John Fagan, Defendant Fraser owed a duty to exercise that degree of care, skill, caution, diligence and foresight exercised by and expected of physicians in similar situations.

177.   Defendant Fraser deviated from the standard of care and was negligent in his care and treatment of John Fagan by:

a.   Failing to order timely and appropriate imaging, assessment, and monitoring of Mr. Fagan's condition;

b.   Failing to properly operate on Mr. Fagan on November 23, 2015;

c.   Failing to perform the appropriate procedure(s) on November 23, 2015, on Mr. Fagan for his condition;

d.   Failing to timely and properly monitor Mr. Fagan following his November 23, 2015 procedure;

e.   Failing to order postoperative imaging, including a CT scan, to determine the presence or absence of a leak;

f.   Failing to surgically re-explore Mr. Fagan;

g.   Failing to recognize the urgent nature of Mr. Fagan's condition after evaluations at Aspen Valley Hospital;

h.   Failing to request timely and proper consults from specialists regarding Mr. Fagan's condition;

i.   Failing to advise Mr. Fagan and his family of the severity of his condition;

j.   Failing to advise Mr. Fagan and his family of the option of timely transferring Mr. Fagan to a different medical facility than Aspen Valley Hospital;

    k.    Failing to timely and appropriately transfer Mr. Fagan to a medical facility with the appropriate capabilities; and

    l.    Failing to timely assess, diagnose, and treat Mr. Fagan's condition.

178.    As a direct and proximate result of the negligence of Defendant Fraser, Mr. Fagan died and his widow, Plaintiff Jane Fagan suffered, continues to suffer, and will suffer in the future non-economic damages including, without limitation, profound grief and sadness, loss of companionship, emotional pain and suffering, impairment of quality of life, inconvenience and anguish, together with economic damages including, without limitation, the financial benefit Mrs. Fagan would have expected to receive from Mr. Fagan, together with burial and funeral expenses, and loss of services.

## V.  SECOND CLAIM FOR RELIEF
### (Medical Negligence – Defendant Livengood)

179.    Plaintiff incorporates the preceding paragraphs herein by reference.

180.    At all times relevant, John Fagan was under the care and treatment of Defendant Livengood.

181.    With respect to his care and treatment of John Fagan, Defendant Livengood owed a duty to exercise that degree of care, skill, caution, diligence and foresight exercised by and expected of physicians in similar situations.

182.    Defendant Livengood deviated from the standard of care and was negligent in his care and treatment of John Fagan by:

    a.    Failing to order timely and appropriate imaging, assessment, and monitoring of Mr. Fagan's condition;

b.    Failing to properly operate on Mr. Fagan on November 23, 2015;

c.    Failing to perform the appropriate procedure(s) on November 23, 2015, on Mr. Fagan for his condition;

d.    Failing to timely and properly monitor Mr. Fagan following his November 23, 2015 procedure;

e.    Failing to order postoperative imaging, including a CT scan, to determine the presence or absence of a leak;

f.    Failing to surgically re-explore Mr. Fagan;

g.    Failing to order timely and proper consults from specialists regarding Mr. Fagan's condition;

h.    Failing to recognize the urgent nature of Mr. Fagan's condition after evaluations at Aspen Valley Hospital;

i.    Failing to advise Mr. Fagan and his family of the severity of his condition;

j.    Failing to advise Mr. Fagan and his family of the option of timely transferring Mr. Fagan to a different medical facility than Aspen Valley Hospital;

k.    Failing to timely and appropriately transfer Mr. Fagan to a medical facility with the appropriate capabilities; and

l.    Failing to timely assess, diagnose, and treat Mr. Fagan's condition.

183.    As a direct and proximate result of the negligence of Defendant Livengood, Mr. Fagan died and his widow, Plaintiff Jane Fagan suffered, continues to suffer, and will suffer in

the future non-economic damages including, without limitation, profound grief and sadness, loss of companionship, emotional pain and suffering, impairment of quality of life, inconvenience and anguish, together with economic damages including, without limitation, the financial benefit Mrs. Fagan would have expected to receive from Mr. Fagan, together with burial and funeral expenses, and loss of services.

## VI.   THIRD CLAIM FOR RELIEF
### (Direct Negligence – Defendant AVH)

184.    Plaintiff incorporates the preceding paragraphs herein by reference.

185.    Colorado's General Assembly has designated the Colorado Department of Health and Environment ("department") to establish and enforce standards for the operation of hospitals. C.R.S. §§ 25-1-102 and 103.

186.    The department has established "minimum" standards for general hospitals such as Rose Medical Center through regulation.  6 CCR 1011-1 Chap 04, 1.101(1).

187.    At all relevant times, Mr. Fagan was under the care and treatment of Defendant AVH.

188.    Defendant AVH owed a duty of care to its patients, including Mr. Fagan.

189.    Defendant AVH, as a hospital, had a special relationship with, and owed a special duty of care, to its patients, including Mr. Fagan.

190.    Under Colorado law, hospitals are required to "provide services and hospital departments necessary for the welfare and safety of patients."  6 CCR 1011-1 Chap 04.

191.    A hospital is responsible for all functions performed in the hospital and must ensure that patients receive care in a safe setting.  6 CCR 1011-1 Chap 04, 6.102(2) and (5).

192.     In Colorado, a hospital has a duty to its patients to ensure: that each department or service has written policies and procedures, that services are provided in accordance with current standards of practice, and that the policies and procedures are available to employees at all times. 6 CCR 1011-1 Chap 04, 6.102(7).

193.     A hospital has a duty to ensure that services to patients are provided in accordance with recognized standards of practice and facility policy and procedure. 6 CCR 1011-1 Chap 04, 11.101(1).

194.     A hospital has a duty to ensure that written policies and procedures are developed and implemented by each department or service that provides direct patient care. 6 CCR 1011-1 Chap 04, 11.102(2).

195.     A hospital has a duty to ensure that it maintains written nursing procedures that establish standards of performance for safe, effective nursing care of patients. 6 CCR 1011-1 Chap 04, 12.102(1).

196.     The requirements of 6 C.C.R. 1101-1 comprise an independent, non-delegable duty that a hospital owes to its patients.

197.     At all relevant times, AVH publicly stated and represented that their mission was "to deliver extraordinary healthcare in an environment of excellence, compassion, and trust".

198.     At all relevant times, AVH publicly stated and represented that they were "a twenty-five bed community hospital that represents the best of two worlds – the warmth and friendliness of a small town and the technical expertise of a major medical center".

199.    Defendant AVH publicly stated that it attributed "AVH's popularity with patients to a mulitidisciplinary approach. 'It's not about a single nurse or doctor. It is about an entire team – including the patient and family – coming together for the best possible care.'"

200.    Defendant AVH had a duty to use reasonable care to develop, implement, monitor, and enforce safety policies, procedures, systems, protocols, and practices to ensure that patients like Mr. Fagan were appropriately evaluated and cared for.

201.    Defendant AVH negligently failed in its duty to ensure the timely and appropriate selection, development, implementation, direction, coordination, and enforcement of hospital systems and policies to ensure the early identification and treatment of sepsis and relay of information between providers at AVH.

202.    Defendant AVH had a duty and a requirement to have systems in place to ensure that patients such as Mr. Fagan were appropriately evaluated and cared for.

203.    Defendant AVH, negligently failed to have systems in place to ensure that Mr. Fagan was appropriately evaluated and cared for.

204.    Defendant AVH negligently failed in its duty to have in place a warning system as part of its electronic medical record system to alert providers when a patient developed the signs and symptoms of sepsis amd this contributed to the delay in the diagnosis of Mr. Fagan's sepsis.

205.    Defendant AVH failed in its duty to train, supervise, monitor and assess the competency of its staff as relates to sepsis, septic shock, fluid resuscitation, postoperative care, lab work, medication management, care team communication, care team management, care team coordination, patient assessment, patient reassessment, patient transfer, and other areas.

206.    Defendant AVH breached its duties, and was negligent, by:

a.   Failing to meet the duties and responsibilities described in the paragraphs above;

b.   Failing to develop, implement, monitor, and enforce safety policies, procedures, protocols, and practices to ensure that patients like Mr. Fagan were appropriately evaluated and cared for at AVH;

c.   Failing to have systems in place to ensure that patients like Mr. Fagan were appropriately evaluated and cared for at AVH;

d.   Failing to have reasonable policies, procedures, system, protocols, and practices regarding sepsis, septic shock, fluid resuscitation, postoperative care, lab work, medication management, care team communication, care team management, care team coordination, patient assessment, patient reassessment, and patient transfer, among others;

e.   Failing to have reasonable policies, procedures, protocols, and practices in place to prevent and/or identify physician and nursing negligence;

f.   Failing to ensure that health care providers working in AVH were appropriately trained and knowledgeable regarding policies, procedures, protocols, and practices applicable to patients like Mr. Fagan;

g.   Failing to ensure that an adequate system was in place to identify and treat patients who were at risk of developing sepsis;

h.   Failing to implement adequate systems to identify and treat patients at risk of developing sepsis;

      i.    Failing to ensure that Defendant AVH adequately communicated and interacted in a manner that would ensure that the nurses understood and followed the policies and standards of Defendant AVH;

      j.    Failing to ensure that the proper imaging studies were available for the benefit of patients such as Mr. Fagan; and

      k.    Failing to ensure proper and adequate physician staffing.

207.    As a direct and proximate result of the negligence of Defendant AVH Mr. Fagan died and his widow, Plaintiff Jane Fagan suffered, continues to suffer, and will suffer in the future non-economic damages including, without limitation, profound grief and sadness, loss of companionship, emotional pain and suffering, impairment of quality of life, inconvenience and anguish, together with economic damages including, without limitation, the financial benefit Mrs. Fagan would have expected to receive from Mr. Fagan, together with burial and funeral expenses, and loss of services.

## VII.   **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully prays for compensatory damages in her favor and against Defendants in an amount to be determined by the trier of fact, interest from the date of filing, pre-judgment and post-judgment interest as allowed by law, witness fees, filing fees, deposition expenses, attorneys fees, and for such other and further relief as the Court may deem appropriate and just including all costs.

**PLAINTIFF DEMANDS A TRIAL BY JURY.**

Respectfully submitted this 22nd day of November, 2017.

s/ Matthew R. Laird
Isobel S. Thomas
Matthew R. Laird
THOMAS KEEL & LAIRD, LLC
50 South Steele Street, Suite 450
Denver, Colorado 80209
Telephone:   (303) 372-6130
Facsimile:   (303) 845-9821
ithomas@thomaskeel.com
mlaird@thomaskeel.com

-and-

Peter A. McClenahan
OGBORN MIHM LLP
1700 Broadway, Suite 1900
Denver, Colorado 80202
Telephone:   (303) 592-5900
Facsimile:   (303) 592-5910
Peter.McClenahan@ogbornmihm.com
Attorneys for Plaintiff

**Plaintiff's Address:**
230 Pine Shadow Drive
Livingston, Texas 77351